**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **RUBEN B. BOHUCHOT, 36333-177,** | § | |
| **Petitioner,** | § | |
| | § | **3:12-CV-395-L** |
| **v.** | § | **3:07-CR-167-L** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the United States District Court for the Northern District of Texas.  The Findings, Conclusions and Recommendation of the United States Magistrate Judge follow:

**I.  Procedural Background**

Petitioner and his co-defendant Frankie Wong were charged in a multi-count indictment for offenses relating to the award of technology contracts by the Dallas Independent School District ("DISD").  At a joint trial, a jury convicted Petitioner and Wong with conspiring to commit bribery, bribery and conspiring to launder money instruments.  The jury also convicted Petitioner of obstructing a grand jury proceeding and making a false statement on tax returns. The Court sentenced Petitioner to 132 months in prison and a three-year term of supervised release.  The Court also ordered Petitioner to forfeit $979,220.90.  On November 9, 2010, the Fifth Circuit Court of Appeals affirmed Petitioner's conviction and sentence.  *United States v. Bohuchot*, 625 F.3d 892 (5th Cir. Nov. 9, 2010).

Page 1

On February 1, 2012, Petitioner filed the instant habeas petition pursuant to 28 U.S.C. § 2255. He argues:

1. He is actually innocent;

2. He received ineffective assistance of trial counsel when:

 (A) counsel failed to call key witnesses;

 (B) counsel failed to raise a *Brady* claim;

 (C) counsel failed to investigate exculpatory and impeachment evidence;

 (D) counsel failed to defend and object to the government's over-broad motion *in limine*;

 (E) counsel failed to advise him of the facts and law relating to his decision to plead not guilty;

 (F) counsel failed to object to an amendment of the indictment and erroneous jury instructions that lowered the *mens rea* required for conspiracy to commit money laundering;

 (G) counsel failed to obtain IRS documents that would show he received no financial gain from the bribery or money laundering;

3. The prosecutor committed misconduct by;

 (A) knowingly eliciting false testimony;

 (B) making improper closing arguments;

 (C) suppressing information;

4. Appellate counsel was ineffective for failing to raise meritorious arguments on direct appeal; and

5.       Petitioner is entitle to relief due to cumulative error.

## II.  Factual Background

The following factual background is taken from the Fifth Circuit's opinion on direct

appeal.

Ruben B. Bohuchot and Frankie Wong were charged in a multi-count indictment for offenses relating to the award of computer technology contracts by the Dallas Independent School District (DISD).  At the time of the indictment, Bohuchot was DISD's chief technology officer.  Wong was the president and co-owner of Micro Systems Engineering, Inc. (MSE), a computer reseller that contracted with larger companies to resell and maintain computer hardware.

Two contracts were at the center of the government's bribery and conspiracy allegations.  The first was for a technology program called Seats Management, which provided computers, related services, and support for schools within the district.  DISD awarded this contract, calling for payments totaling approximately $18 million, to a partnership between Hewlett-Packard (HP) and MSE in September 2002.  MSE received at least $4,674,303 for its participation in the partnership.  The second contract involved E-Rate, a federal program that provides money and technology to school districts that subsidize student lunches.  DISD awarded this contract, contemplating payments of over $115 million, in December 2003 to a group of 13 companies called the Consortium, which included HP, Novell, and MSE.  More than $35 million was paid to MSE on behalf of the Consortium between May 2003 and July 2005 for MSE's participation.

DISD used Requests for Proposals (RFP) to inform potential bidders of the scope, location, and requirements for its major technology projects.  To insure fairness in the bidding process, information regarding forthcoming RFPs and their requirements was released to all competitors at the same time.  The propriety of the relationship between Bohuchot and Wong came into question when a vendor who bid unsuccessfully for one of the DISD technology contracts lodged a complaint.  Subsequent investigation by the government revealed substantial evidence that Wong and Bohuchot had engaged in an ongoing scheme in which Bohuchot provided valuable inside information regarding the RFP process to Wong in return for cash, vacation trips for Bohuchot and his family members, employment for Bohuchot's son-in-law, sporting event tickets, and extensive use of two yachts owned by an MSE affiliate.  There was evidence that Bohuchot provided insider information for approximately one year before the Seats Management RFP was released and that Bohuchot had met with Wong in Key West, Florida days before the release of that RFP.  Witnesses for the government who were present at this latter meeting testified that Bohuchot shared a draft copy of the Seats Management RFP with Wong and associates at that time.

> Wong and Bohuchot were convicted of violating and conspiring to violate 18 U.S.C. §§ 666(a)(1)(B) and (2) (bribery concerning programs receiving federal funds), and of conspiracy to commit money laundering.  Bohuchot was also convicted of obstruction of the grand jury proceeding and of making a false statement on a tax return . . . .

*United States v. Bohuchot*, 625 F.3d 892, 894-895 (5th Cir. 2010).

## III.  Discussion

### 1.    Actual Innocence

Petitioner argues he is actually innocent of (1) conspiring with Wong to commit bribery; (2) committing bribery; (3) conspiring with Wong to launder money; and (4) obstructing the grand jury (Counts One through Ten and Thirteen).

To the extent Petitioner is arguing the evidence supporting Counts One through Ten was insufficient, the Fifth Circuit Court of Appeals denied Petitioner's insufficiency of the evidence claims on direct review.  Petitioner cannot now re-litigate those claims.  *See United States v. Rocha*, 109 F.3d 225, 230 (5th Cir. 1997); *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986).  Additionally, claims of insufficiency of the evidence cannot be raised on collateral review.  *Forrester v. United States*, 456 F.2d 905, 907 (5th Cir. 1972).

Further, although Petitioner argues that the Supreme Court and the Fifth Circuit recognize a free-standing claim of actual innocence, (Pet. Mem. at 5),this is not an accurate statement of the law.  *See United States v. Scruggs*, 691, F.3d 660, 671 (5th Cir. 2012) ("'actual innocence' is not a free-standing ground for relief.").  Actual innocence is instead "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *McGowen v. Thaler*, 675 F.3d 482, 499 (5th Cir. 2012).  In this case, Petitioner is attempting to raise free-standing claims of actual innocence.  These claims should be denied.

2.      **Ineffective Assistance of Counsel**

To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

A.      **Failure to Call Witnesses**

Petitioner argues his counsel was ineffective because counsel failed to call key witnesses to testify at trial.

1.      **Alden Gaw**

Petitioner argues that Alden Gaw's testimony would have showed that Petitioner "ensured the RFP process was fair and competitive for all vendors. . . . [and] also would have shown that Bohuchot did not develop contract specifications, that Bohuchot was never a member

of any evaluation committee, and Bohuchot did not negotiate any [Seats Management] or E-Rate contracts." (Pet. Mem. at 12.)

To support his claims, Petitioner attaches excerpts of Gaw's deposition testimony. (Pet. Ex. BE.) The deposition testimony shows that Gaw stated he was involved in writing the specs for the E-Rate contract and that there was no deviation from the normal procurement routine for this project. (*Id*. at 308, 310.) Gaw's deposition testimony, however, provides no evidence to support Petitioner's claims that he did not share nonpublic information with Wong to help MSE obtained the contract. Gaw's testimony also does not establish that Gaw did not consult with Petitioner in writing the specs for the E-Rate contract. In fact, Gaw testified that Petitioner had assigned him to be on the bid review committee. (*Id*. at 309.)

Petitioner also argues Gaw would have testified that the value-add components of the RFP were publicly known, which would prove he did not disclose non-public information. "Value-adds" were things of value to DISD outside the RFP specifications that are added by the bidder, such as sponsorship of a golf tournament. Petitioner also claims it was public knowledge that bidding vendors would be required to have a billion-dollar net worth. Gaw's deposition excerpts do not show that he testified that the value-adds and the billion-dollar net worth requirement were publicly known prior to publication of the RFP. Petitioner has failed to show his counsel was ineffective for failing to call this witness.

### 2.     Barbara Boudreau and Erin Malloy

Petitioner claims Barbara Boudreau, who was a Dell sales representative assigned to DISD, would have testified that Bohuchot spoke with her about computer specifications before the Seats Management RFP was published, and that she was knowledgeable about the billion-

Page 6

dollar net worth requirement prior to the RFP being published because she had previously responded to two DISD RFPs with these requirements.  Petitioner argues, therefore, that he was allowed to talk to vendors prior to an RFP being published, and he did not disclose non-public information regarding the billion-dollar net worth requirement.

Similarly, Petitioner claims Erin Malloy, who was the Outbound K-12 Education Account Executive for Apple Computers assigned to DISD, would have testified that the billion-dollar net worth requirement, and the minority representation requirements, were publicly known in advance of the RFP publication date and that Petitioner frequently met with vendors prior to the RFP being published.

Petitioner has submitted no evidence that these witnesses would have testified favorably for the defense.  *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (stating that to establish the requisite *Strickland* prejudice, Petitioner must show that the testimony would have been favorable); *see also See Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) ("hypothetical or theoretical testimony will not justify the issuance of a writ . . . .").  These claims should be denied.

### 3.     David Boggs

David Boggs was hired by Alden Gaw as a contractor to work in DISD's network services.  In Boggs's affidavit, he stated that Alden Gaw oversaw the technical specifications work for the E-Rate Year 6 RFPs, that Petitioner did not write the technical specifications for this contract and that Petitioner had no influence or vote on the vendor selection.  (Pet. Ex. 13 at 382-83.)

Boggs's testimony, however, does not rebut the government's claims that Petitioner

provided Wong with nonpublic information which allowed MSE to gain an unfair advantage

over its competitors.  Further, as the Fifth Circuit stated regarding the E-rate contract:

> [T]he government concedes that it presented no direct evidence that Bohuchot assisted
> Wong in submitting the successful bid or otherwise influencing the contracting process.
> However, . . . there was considerable evidence that Wong provided money and other
> things of considerable value to Bohuchot after the E-rate contract was awarded.  A
> rational juror could infer from this circumstantial evidence and the evidence regarding the
> Seats Management contract that Bohuchot accepted or solicited the remuneration from
> Wong as part of an ongoing scheme as alleged in the indictment.

*Bohuchot* 625 F.3d at 900.  Petitioner has failed to show his counsel was ineffective.

### 4.    John Martin

Petitioner states John Martin was an attorney hired by DISD to investigate the DISD E-

Rate bidding process.  Petitioner claims Martin's testimony would have "cleared the E-Rate

procurement process of any corruption" because Martin would have testified there were no

violations of federal or state procurement laws concerning the E-Rate contract.  (Pet. Mem. at

15.)  In support of his claims, Petitioner attaches an email from Martin to DISD Superintendent

Michael Hinojosa stating: "The bids were properly let, the 28-day Rule was complied with, many

bids were received – all sealed – the Selection Committee rated the Consortium's bid the highest

on the point scale used and it was the low bid."  (Pet.'s Ex. AC at 148.)

There is no evidence, however, that Martin investigated whether Petitioner provided

Wong with nonpublic, inside information in exchange for money and other items.  Petitioner has

failed to show his counsel was ineffective for not calling this witness at trial.

### 5.    Aimee Wakelin

Petitioner argues his counsel was ineffective for failing to call his daughter, Aimee

Wakelin, to testify.  He states that Wakelin could establish that he and Wong did not funnel

money through Wakelin's ex-husband Bernard Cabatingan to cover up illegal payments from Wong to Petitioner.  The government argued at trial that Wong paid Cabatingan bribery money that Cabatingan then gave to Petitioner.  Petitioner submits an affidavit from Wakelin in which she states that Cabatingan was hired by Frankie Wong as a contractor for a salary of $150,000. (Pet. Ex. 18 at 430-434.)  She states that payments Cabatingan made to Petitioner were repayments for living and moving expenses, and were not illegal payments by Wong to Petitioner.  (*Id.*)  Wakelin also claimed Cabatingan was having problems with his memory during trial because of alcohol use.  (*Id.*)

Petitioner has failed to show that but for his counsel's failure to call Wakelin as a witness, there is a reasonable probability that the result of the trial would have been different.  The Fifth Circuit determined that there was "overwhelming evidence" to support the jury's finding that Petitioner and Wong agreed to commit money laundering.  *Bohuchot* 625 F.3d at 903.  This claim should be denied.

### 6.    Kayla Thornton

Petitioner argues that Kayla Thornton would have disputed the trial testimony of Blair Thomas and Bill Coleman.  Thomas and Coleman testified that on a trip to Key West, Florida Petitioner disclosed to them the RFP for the Seats Management contract.  (June 20, 2008 Trial Tr. at 153-58; Trial Tr. Vol. XI(B) at 35-37.)  Petitioner states that Kayla Thornton was present on the trip to Key West and would testify that Petitioner did not disclose this information. Petitioner, however, has submitted no evidence that Thornton would have testified favorably for the defense.  This claim is conclusory and should be denied.  *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional

issues in habeas proceedings).

**B.      *Brady* Material**

Petitioner argues his counsel failed to file a motion pursuant to *Brady v. Maryland*, 462 U.S. 111 (1983), arguing that the government withheld Kayla Thornton's contact information.

To establish a *Brady* claim, Petitioner must show that the prosecution suppressed favorable, material evidence that was not discoverable through due diligence.  *Brady*, 373 U.S. at 87.  Evidence is "material" if there is a "reasonable probability" that the outcome of the trial would have been different had the evidence been disclosed to the defendant.  *United States v. Freeman*, 164 F.3d 243, 248 (5th Cir. 1999).

On May 27, 2008, the government sent Petitioner's counsel a letter informing him that Kayla Thornton, who was Blair Thomas's ex-wife, had told law enforcement that Thomas "was untruthful."  (Pet. Ex. 19 at 435-440.)  In response to Petitioner's counsel's letter seeking contact information for Kayla Thornton, the government informed Petitioner's counsel that it would not release contact information for witnesses unless ordered to do so by the court.  (*Id*. at 442-43.)

In this case, Petitioner has failed to show that Kayla Thornton's contact information was evidence that would be favorable to the defense.  Further, Petitioner has made no showing that had this contact information been disclosed, there is a reasonable probability that the result of the proceeding would have been different.  Petitioner's claim should be denied.

**C.      Investigation**

Petitioner argues his counsel was ineffective because he failed to investigate exculpatory and impeachment evidence.

### 1.      Boxes of Documents

Petitioner claims the government made 157 boxes of discovery available to the defense, but that defense counsel failed to review these documents.  Petitioner states defense counsel relied on him to review the documents.  Petitioner, however, has failed to show how he was prejudiced by this alleged action.  Petitioner states he created an inventory of the government's discovery documents and that he provided defense counsel with multiple documents identifying potential witnesses and documents to be examined.  (Pet. Mem. at 22.)  Petitioner's claim should be denied.

### 2.      Audio-Video Tape

Petitioner states his counsel should have admitted into evidence an audio-video recording of a DISD meeting that occurred on August 6, 2002.  Petitioner states that in that recording, he refers to Wong's company as "the Asian company."  (Pet. Brief at 22.)  Petitioner argues his statement shows he did not know Frankie Wong at that time, or he would have referred to the company as "Frankie Wong's Company."  (*Id*.)

Petitioner's claim, however, contradicts his affidavit.  In his affidavit, Petitioner stated that he had his first meeting with Frankie Wong in September/October 1999.  (Pet. Ex. 1 at 2.) Petitioner also stated he visited Key West, Florida with Frankie Wong in May, 2002.  (*Id*. at 31.) Petitioner has failed to show his counsel was ineffective for failing to admit the August 6, 2002, audio-video tape to argue that Petitioner did not know Frankie Wong in August, 2002.

### 3.      Lowest Cost

Petitioner argues his counsel failed to admit evidence showing that "low price is the deciding factor to determine who wins a contract."  (Pet. Mem. at 24.)  The record shows,

however, that being the lowest bid was not the deciding factor to winning the contract. Roland Taylor, contract administrator for DISD, testified that the winning bid for the Seats Management contract was not required to be the lowest price bid. (Trial Tr. Vol. IV at 91-92, 131). Additionally the RFP showed that cost was weighted at only thirty points out of a possible 180 points in scoring the proposals. (GE 12 at 38-39.)

Petitioner also states his counsel failed to use the proper DISD Purchasing Policy to impeach testimony by Roland Taylor who he states testified it was improper for Petitioner to talk to vendors. The evidence at trial, however, showed that Petitioner did not simply provide information to prepare a RFP, but Petitioner provided HP/MSE with valuable, nonpublic information, allowing HP/MSE to be "better prepared than competitors." *Bohuchot*, 625 F.3d at 899. Petitioner's claim should be denied.

### 4.      Non-Public Information

Petitioner argues his counsel failed to investigate and defend against the government's claim that he disclosed nonpublic information. Petitioner states his counsel should have admitted into evidence: (1) emails showing that HP partnered with MSE in 1998 and that HP and MSE partnered to bid on other DISD contracts, (2) federal regulations stating that "exchanges with industry official before receipt of proposals are encouraged," and (3) DISD policy and emails showing that DISD departments are allowed to contact vendors prior to publication of an RFP. None of Petitioner's evidence, however, shows that he was authorized to disclose the nonpublic RFP requirements to MSE prior to publication of the RFP. There was "very substantial" evidence at trial that Petitioner disclosed this nonpublic information to HP/MSE to help them gain an advantage in the bid process. *Bohuchot* 625 F.3d at 899-900. Petitioner's claims should

be denied.

     **5.**    *Mens Rea*

Petitioner argues his counsel failed to investigate and present evidence that he lacked the necessary *mens rea* to be convicted of the charges.  He states his counsel should have submitted letters of recommendation from various people who stated he always had the best interest of DISD at heart and that he implement programs that saved DISD millions of dollars.  He also argues his counsel should have showed that Petitioner's employment at DISD was tenuous because the school board was removing most of the people who, like Petitioner, had transferred from the San Francisco Unified School District.  Petitioner claims that Wong would not spend money to bribe an employee who would not likely be at DISD for long.

Petitioner's recommendation letters and his assertion that his employment with DISD was tenuous fail to show that he lacked to required *mens rea* to commit the offenses.  The Fifth Circuit found that there was "overwhelming evidence" to support the jury's *mens rea* finding regarding the money laundering charges and "considerable evidence" to support the jury's findings on the other charges.  *Bohuchot* 625 F.3d at 900, 903.  Petitioner's claim should be denied.

     **6.**    **Wong-Bohuchot Relationship**

Petitioner claims his counsel was ineffective for failing to investigate and argue facts that "showed the true Bohuchot-Wong relationship."  (Pet. Mem. at 29.)  Petitioner argues that he and Wong became friends after the Seats Management contract was awarded, and that their friendship was independent of Petitioner's job with DISD.  In light of the substantial evidence of Petitioner's guilt, Petitioner has failed to show there is a reasonable probability that the result of

his trial would have been different if his counsel had introduced this evidence.  This claim should be denied.

### 7.      Impeachment

Petitioner argues his counsel was ineffective for failing to investigate evidence that would have impeached Blair Thomas's credibility.  Petitioner states that Thomas claimed to have received the Bronze Star while serving in the United States Army Special Forces, but that Thomas never served in the Special Forces and was never awarded the Bronze Star.  Petitioner has submitted no evidence that Thomas did not serve in the Special Forces and that he was not awarded the Bronze Star.  Petitioner's claims are conclusory and should be denied.

Petitioner also claims his attorney failed to impeach Thomas's testimony that Thomas paid all the expenses to the Mission Golf Tournament.  Petitioner states he paid the entry fees for this Tournament.  Petitioner has submitted no evidence that he paid these entry fees.  Further, Thomas did not testify that Petitioner did not pay any of these fees, but stated he was not aware of any payment by Petitioner.  ( June 20, 2008 Trial Tr. at 200.)

Finally, Petitioner argues Thomas lied when he testified that Petitioner disclosed the Seats Management RFP on the trip to Key West, Florida.  The record shows that defense counsel cross-examined Thomas regarding this testimony and questioned him regarding whether he disclosed this information in his initial meetings with FBI agents.  (*Id.* at 224-26.)  Defense counsel also elicited testimony from Thomas that he signed a proffer agreement with the government and agreed to provide the government with information in this case.  (*Id.* at 232-240.)  Petitioner has failed to show his counsel was ineffective in attempting to impeach this witness.

**8.      Yacht Expenses**

Petitioner claims his counsel failed to investigate the expenses associated with his use of

the yachts.  He argues his offense level would have been 14 levels lower under USSG §§

2B1.1(b) and 2C1.1(b)(2) if his counsel had produced evidence regarding his yacht usage.

Petitioner's trial counsel objected to the expense calculation in his objections to the PSR, and

appellate counsel raised the issue on direct appeal.

On direct appeal, the Fifth Circuit determined that the district court incorrectly estimated

the benefit of the two yachts to Petitioner.  The Fifth Circuit determined that Petitioner should

not be held accountable for the market value of the yachts since he did not have any ownership

interest in the yachts.  *Bohuchot* 625 F.3d at 903-4.  Instead, the Court held Petitioner

accountable for the cost of renting the yachts.  The Court found that this cost was over $121,757,

so Petitioner's 14 level increase under the Sentencing Guidelines remained the same, and the

error was harmless.  *Id*. at 904.

Petitioner now disputes the number of days he used the yachts.  He argues that he used

the yachts 5 times for all day fishing trips at $2,500 per trip.  He states he also used the yachts

thirty times for cruises of approximately two hours and states this value was $16,666.00  Based

on these claims, he calculates the total value as $29,166.00.

The Fifth Circuit, however, determined that there was evidence Petitioner used the yachts

for more than 49 days and the daily value was $2,500, for a total of $122,500.  *Id*. at 904.

Petitioner's conclusory allegations that he used the yachts less than 49 days fails to entitle him to

relief.

### D.    *In Limine* Motion

Petitioner argues his counsel failed to adequately defend and object to the government's *in limine* motion.  Before trial, the government filed a motion *in limine* to prevent Petitioner from introducing evidence of two DISD-sponsored investigations.  Petitioner argues both of these investigations showed he did not commit any "corrupt actions."  (Pet. Mem. at 35.)  Petitioner claims his counsel should have argued the investigations would have showed that Petitioner lacked the required *mens rea* to commit the offenses.

The record shows that defense counsel objected to the motion *in limine*.  (Trial Tr. Vol. 1 at 18-27; Vol. 3 at 32-38.)  Defense counsel also argued that admission of the evidence was needed to defend against the *mens rea* element.  *Id*. at 37.  After hearing arguments, the Court overruled the objection.  Petitioner has failed to show that his counsel was ineffective.

### E.    Not Guilty Plea

Petitioner claims his counsel was ineffective because counsel failed to advise him of the relevant facts and law relating to his decision to plead not guilty.  Petitioner claims his counsel told him that the government made a plea offer of two years in prison and two years probation.  He states he asked his counsel whether he should accept the plea offer, but counsel offered no advice and did not discuss the ramifications of going to trial.  He also claims his counsel provided incorrect information regarding his sentence exposure and told Petitioner that the maximum sentence was 60 months.

The government responds that there is no evidence it ever made a plea offer to Petitioner.  There is nothing in the record showing the existence of any plea offer.  Petitioner's claim that he would have accepted a plea offer but for the ineffective assistance of counsel is conclusory and

should be denied.

### F.   Constructive Amendment

Petitioner argues his counsel was ineffective because counsel never objected to the government's constructive amendment of the indictment and the erroneous jury instructions.

On direct appeal, the Fifth Circuit found that it was debatable whether a constructive amendment of the indictment occurred. *Bohuchot* 625 F.3d at 899. The Court then determined that if a constructive amendment did occur, Petitioner failed to show that it affected the outcome of the trial. *Id*. Similarly, the Fifth Circuit assumed, without deciding, that the jury instructions did not require the jury to find all necessary elements of conspiracy to commit money laundering. *Id*. at 902-03. The Court found, however, that the error was harmless, stating there was "considerable and strong evidence of the intentional and knowing nature of Wong and Bohuchot's agreement and conduct, no jury could reasonably fail to make the requisite findings regarding the applicable *mens rea*." *Id*. at 903. Petitioner, therefore, is unable to show the required prejudice under *Strickland*. This claim should be denied.

### G.   IRS Documents

Petitioner argues his counsel was ineffective for failing to obtain IRS records showing he did not owe any additional taxes on his 2004-2006 tax returns. He states this would show that he received no financial benefit from money laundering or bribery. In support of his claim, Petitioner submits a letter from Pedro Jimenez of the IRS Small Business and Self Employment section of the IRS. (Docket Entry No. 21.) The letter states Jimenez is recommending no changes to Petitioner's tax returns. Petitioner, however, has failed to show what records the IRS examined, and how these records related to the convictions in this case. The letter falls far short

of establishing ineffective assistance of counsel.

**3.     Prosecutorial Misconduct**

Petitioner argues the prosecutor committed misconduct by: (1) knowingly eliciting false testimony of witnesses Roland Taylor and Blair Thomas; (2) making improper closing arguments by arguing facts not in evidence and manipulating trial testimony; (3) suppressing information that witness Dan Tingley's wife filed a *qui tam* suit related to this case; and (4) suppressing Kayla Thornton's address.

The government argues Petitioner's claims that the prosecutor knowingly elicited false testimony and made improper closing arguments are procedurally barred because Petitioner failed to raise these claims on direct appeal.  When a defendant fails to raise a claim on direct appeal, the claim is procedurally defaulted, and can only be considered under § 2255 if petitioner can show cause for his failure to raise the claim on direct appeal, and actual prejudice, or that he is actually innocent.  *Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

In this case, Petitioner argues he requested that his trial and/or appellate counsel raise these claims, but counsel refused to do so.  (Traverse at 8.)  A petitioner can show cause and prejudice by showing that counsel rendered constitutionally ineffective assistance of counsel. *See United States v. Patten*, 40 F.3d 774, 776 (5th Cir. 1994).  The Court will therefore first analyze Petitioner's claims as ineffective assistance of counsel claims.

**A.     False Testimony**

Petitioner claims that Roland Taylor lied by stating that (1) DISD user departments do not contact vendors even after a RFP is published; and (2) vendors are not told that a RFP is coming

out because doing so would give those vendors an advantage.  (Pet. Mem. at 43.)

Contrary to Petitioner's claims, the record shows that Roland Taylor testified that DISD departments could contact vendors before an RFP was published to tell them an RFP was going to be published.  (Trial Tr. Vol. IV at 94.)  If a vendor contacted the DISD department after the RFP was published, the department would let the vendor know that the RFP was on the DISD website.  (*Id*. at 93-94.)  Taylor testified that after an RFP is published, DISD sometimes conducts a pre-proposal meeting where vendors can ask questions about the RFP (*Id*. at 99-100.)  If a vendor contacts DISD to ask a question after the RFP is published, Taylor stated he would post the question and the answer on the DISD website.  (*Id*. at 101.)  Petitioner has failed to show that Taylor testified untruthfully.  He has failed to establish prosecutorial misconduct or ineffective assistance of counsel.

Petitioner claims Blair Thomas lied when he testified that Petitioner disclosed the Seats Management RFP during the Key West, Florida trip.  He states Thomas testified that he reviewed the values of the RFP on that Florida trip, but Petitioner states the values were not published at the time of the trip.  Petitioner also argues Thomas lied when he testified that the disclosure of the RFP helped HP/MSE gain an advantage because it put him on notice that MSE needed to partner with another company to meet the billion-dollar net worth requirement.  Petitioner states Thomas already knew of this billion-dollar net worth requirement from previous DISD RFPs and that MSE already had a contractual relationship with HP.

The record shows that Thomas testified that on the Key West trip Petitioner showed him a document that had "the values, the way the weights of the evaluation would take place." (June 20, 2008 Trial Tr. at 164.)  Thomas therefore testified to the disclosure of the weights assigned to

the value-adds.  Garrett Goetters also testified that Petitioner had told him prior to publication of

the RFP which value-adds would carry the most weight.  (Trial Tr. Vol. VI(B) at 18-19.)

Further, Petitioner has failed to show that Thomas lied when he testified that the disclosure of the

billion-dollar net worth requirement helped HP/MSE gain an advantage.  Early disclosure of the

RFP informed MSE that a billion-dollar net worth requirement would be included in this

contract, and allowed MSE to contact HP to partner on this contract prior to any of MSE's

competitors.  Petitioner has failed to show prosecutorial misconduct or ineffective assistance of

counsel.

      **B.**    **Closing Arguments**

      Petitioner claims the prosecutor committed misconduct during closing arguments by

arguing facts not in evidence and by manipulating prior testimony.

      To establish improper argument by the prosecutor, a defendant must show that the

prosecutor's remarks affected his substantial rights.  To determine whether an argument affected

the defendant's substantial rights, the court must examine (1) the magnitude of the statement's

prejudice, (2) the effect of any cautionary instruction; and (3) the strength of the evidence of the

defendant's guilt.  *United States v. Tomblin*, 46 F.3d 1369, 1389 (5th Cir. 1995).

      Petitioner states the prosecutor wrongly alleged that he did not tell his DISD superiors

that he was friends with Wong and that if the DISD superiors knew that Petitioner was accepting

gifts from Wong, MSE would not have been allowed to bid on the contracts.  Petitioner,

however, cites his own affidavit as evidence that these statements were false.  Petitioner also

argues the prosecutor made mis-statements in closing arguments by stating that Petitioner and

Wong were friends before 2002.  Petitioner argues he and Wong had no communications before

2002.  Petitioner's affidavit, however, shows that he and Wong first met in 1999.  (Pet. Ex. 1 at 2.)  Petitioner claims the prosecutor made other mis-statements in his closing arguments, but does not cite to the trial record.  The court is not required to scour the record to piece together Petitioner's argument.  *Eyikogbe v. Texas State Dept. Of Highways and Public Trans*., 990 F.2d 1252 (5th Cir. 1993).  Petitioner has failed to establish improper argument by the prosecutor that effected his substantial rights.

### C.      *Qui Tam*

Petitioner argues the government concealed the fact that witness Dan Tingley's wife filed a *qui tam* suit relating to this case.  The record, however, shows that the Court ordered the government to disclose the *qui tam* suit to Petitioner on June 4, 2008 (docket entry #136.) Petitioner's claim is without merit and should be denied.

### D.      Kayla Thornton

Petitioner argues the government concealed the address of Kayla Thornton.  As discussed above, the government informed the defense that it would not provide contact information for witnesses unless ordered to do so by the Court.  Petitioner has failed to show the government committed misconduct.

### 4.      Ineffective Assistance of Appellate Counsel

Petitioner argues his appellate counsel was ineffective because he failed to argue that the government's motion *in limine* was over-broad, he failed to argue the government committed rampant prosecutorial misconduct, and he failed to adequately brief the constructive amendment issue.  To the extent Petitioner argued these claims above in his ineffective assistance of trial counsel claims, the claims are without merit and should be denied.  Petitioner has not identified

further briefing his appellate counsel should have made regarding the constructive amendment issue or the government's motion in limine.  As discussed above, Petitioner has also failed to establish prosecutorial misconduct.  Petitioner's claims should be denied.

**5.      Cumulative Error**

Petitioner argues he is entitled to habeas relief because of the cumulative error raised from each of his claims.  The Court has determined that Petitioner has failed to show cumulative error.  This claim should be denied.

**RECOMMENDATION**

For the foregoing reasons, the Court recommends that the motion to correct, vacate or set-aside sentence pursuant to 28 U.S.C. § 2255 be denied.

Signed this 15th  day of July, 2013.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
<u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>**

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).